## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERINA PARKER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.: 20-558** |
| v. | ) | |
| | ) | |
| **LABORATORY CORPORATION** | ) | |
| **OF AMERICA HOLDINGS** | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Erina Parker, in the above styled matter, and files this Complaint against Defendant, Laboratory Corporation of America Holdings, for causes of action and would respectfully show the following:

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, in interference with and in retaliation for the Plaintiff asserting her rights under 29 U.S.C. § 2601, *et seq.* The Plaintiff requests a jury trial pursuant to 42 U.S.C. § 1981a.

### JURISDICTION AND VENUE

2. This Court has jurisdiction in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

3. The unlawful employment practices alleged herein were committed by the Defendant within Mobile County, Alabama. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Erina Parker (hereinafter "Plaintiff" or "Parker"), is a female citizen of the United States, a resident of the State of Alabama, and a former employee of Defendant Laboratory Corporation of America Holdings.

5. Plaintiff was an eligible employee under the FMLA in that she worked for the Defendant for more than 12 months, had worked more than 1250 hours of service within the preceding 12 months, and had worked at a location where at least 50 employees were employed within 75 miles of Plaintiff's worksite.

6. Defendant, Laboratory Corporation of America Holdings, (hereinafter "Defendant" or "LabCorp"), is a foreign corporation operating a health care diagnostics company in Mobile County, Alabama and the surrounding areas, where it employs 50 or more employees. The Defendant employed 50 or more employees for each working day during each of the 20 or more calendar work weeks in the applicable calendar year.

## FACTUAL ALLEGATIONS

7. Plaintiff Parker worked for LabCorp for over four years as a Service Representative, from May 2014 until on or about November 28, 2018.

8. On or about September 21, 2018, while at work, Ms. Parker began to experience severe pain in her foot. She went to the emergency room that day, a Friday, then visited her doctor, Dr. Grant Shell, the following week. She was ultimately diagnosed with planter fascial fibromatosis, a serious medical condition which rendered her unable to use her right foot for any prolonged period. Her condition was at times incapacitating and required ongoing medical treatment by her medical providers.

9. Ms. Parker was initially advised by the emergency room doctor to work a reduced

schedule, for only several hours per day. On September 21, 2018, Ms. Parker thus requested intermittent FMLA leave from LabCorp, which was granted.

10. On September 25, 2018, when Ms. Parker visited Dr. Shell at the Alabama Orthopaedic Clinic ("AOC"), Dr. Shell advised that Parker needed to work light duty for three weeks. He prescribed a boot for her foot. Because one of Ms. Parker's duties was driving, and she was unable to do so with the boot on her foot, Ms. Parker worked in the lab during this time.

11. On October 3, 2018, Ms. Parker returned to Dr. Shell, who, due to the condition of her foot, advised that Ms. Parker needed to be completely off work until at least October 17, 2018, the date of her next appointment. Ms. Parker promptly provided this information to the Reed Group, LabCorp's third party leave administrator.

12. On October 3, 2018, the Reed Group notified Ms. Parker that based on the requests she had submitted, she was eligible for a combination of intermittent and continuous FMLA leave until March 21, 2019.

13. On or about October 12, 2018, Ms. Parker received a phone call from her supervisor, Connie Collins, who asked how long Ms. Parker would be off work. Ms. Parker responded that she was unsure at the time, but would let her know after her next doctor's appointment.

14. Ms. Parker's October 17, 2018 doctor's appointment was rescheduled to October 24, 2018.

15. On October 24, 2018, Ms. Parker's doctor recommended that her continuous leave be extended for approximately six weeks, until December 6, 2019, for ongoing treatment of her serious medical condition. On this same day, Ms. Parker promptly completed a Health Care Certification Form, so that this extended leave could be approved by the Reed Group, LabCorp's

third party leave administrator.

16. Ms. Parker called her supervisor, Connie Collins, and left a message informing her she would return to work on December 7, 2020.

17. Throughout this time, Ms. Parker was in regular contact with both her supervisor, Connie Collins, and the Reed Group. All parties were aware of Ms. Parker's medical situation and her need for ongoing leave.

18. Ms. Parker was again seen at the AOC on December 5, 2020, when she was told she could return to work the following day. Ms. Parker immediately went to LabCorp and spoke to supervisor Angela Panita, telling her she was excited to return to work the next day. Unable to find Ms. Collins, Ms. Parker left a copy of her return to work slip in Collins's drop basket.

19. The following day, Ms. Parker returned to work. Ms. Collins informed Ms. Parker that she had been terminated, effective November 28, 2018, because she had failed to submit her FMLA paperwork.

20. This was a shock for Ms. Parker, because she had worked diligently to timely submit all requested paperwork. Moreover, LabCorp had not informed Ms. Parker that her FMLA paperwork was deficient or that she had been terminated.

21. Ms. Parker immediately made multiple calls to her doctor's office and to the Reed Group in an effort to get the paperwork re-submitted. The paperwork was again faxed and emailed to Reed Group and LabCorp.

22. Ms. Parker learned that due to a technical glitch at her physician's office, and due in no part to any fault of Ms. Parker, her Health Care Provider Statement was not faxed to the Reed Group on the intended date, even though AOC had assured Ms. Parker it had been sent to her employer. Once the mistake was realized, both Ms. Parker and AOC resent the information, with

an explanation for the delay.

23. Over the next several weeks, Ms. Parker continued to work exhaustively with Reed Group to resubmit any and all requested paperwork.

24. On or about January 16, 2019, the Reed Group finally informed Ms. Parker that only portions of her leave had been approved.

25. On January 18, 2019, Ms. Parker again called the Reed Group to follow up to see if she could correct any perceived deficiencies in the paperwork. The representative stated he was working with LabCorp Human Resources, looking for evidence of a phone call and other supposed deficiencies in the paperwork.

26. Ms. Parker remained in contact with the Reed Group, who indicated until at least March 2019 that the documentation of her leave requests was continuously under review.

27. LabCorp never allowed Ms. Parker to return to work.

28. Ms. Parker never received any sort of termination paperwork from LabCorp.

29. As the result of the Defendant's conduct, Ms. Parker was deprived of income and other benefits due her. She also suffered embarrassment, humiliation, inconvenience, and mental distress.

30. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay with interest, front pay, an injunction, and liquidated damages is her only means of securing adequate relief.

31. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT I

### INTERFERENCE WITH PLAINTIFF'S RIGHTS SECURED BY THE FAMILY MEDICAL LEAVE ACT OF 1993

32. Plaintiff realleges and incorporates by reference paragraphs 1 through 31 above with the same force and effect as if fully set out in specific detail herein.

33. As set forth herein, Plaintiff was an eligible employee under the FMLA in that she worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within a 75 mile radius.

34. As a result of her serious medical condition, Plaintiff requested medical leave from the Defendant.

35. Defendant refused to approve the great majority of Plaintiff's leave despite having been provided documentation thereof.

36. Defendant failed to provide Plaintiff adequate notice of any perceived deficiencies in her FMLA paperwork and failed to provide her adequate time to cure any such perceived deficiency. Defendant ultimately terminated Plaintiff rather than allow her to cure any perceived deficiencies in her FMLA paperwork.

37. As set out herein, Defendant interfered with Plaintiff's rights under the FMLA.

38. As set out herein, Defendant refused to grant Plaintiff FMLA leave.

39. The Defendant willfully, intentionally, maliciously, and with reckless indifference interfered with Plaintiff's rights under the FMLA by, including but not limited to, refusing to grant her FMLA leave, refusing to provide her with FMLA paperwork, refusing to notify her of perceived deficiencies in her paperwork, refusing to provide her adequate opportunity to cure any

such deficiencies, and terminating her employment.

40. The Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, front pay, an injunction, a declaratory judgment, liquidated damages, attorneys' fees, costs, and expenses. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II

### RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 above with the same force and effect as if fully set out in specific detail herein.

42. As set forth herein, Plaintiff was an eligible employee under the FMLA in that she worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within a 75 mile radius.

43. As a result of her serious medical condition, Plaintiff requested medical leave from the Defendant.

44. Defendant refused to grant Plaintiff all of the requested leave and refused to reinstate her after her leave concluded.

45. Because Plaintiff exercised her rights under the FMLA, Defendant retaliated against Plaintiff, as set out herein.

46. The Defendant willfully, intentionally, maliciously, and with reckless indifference retaliated against the Plaintiff in the terms, conditions, benefits of her employment by, including

but not limited to, refusing to grant her FMLA leave, refusing to provide her with FMLA paperwork, refusing to notify her of perceived deficiencies in her paperwork, refusing to provide her adequate opportunity to cure any such deficiencies, and terminating her employment.

47. The Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, front pay, an injunction, a declaratory judgment, liquidated damages, attorneys' fees, costs, and expenses. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by the Family and Medical Leave Act of 1993;

2. Grant Plaintiff a preliminary and permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the Family and Medical Leave Act of 1993;

3. Grant the Plaintiff an order requiring the Defendant to make her whole by awarding her instatement into the position she would have occupied in the absence of the unlawful acts by the Defendant with the same seniority, leave and other benefits of the position, front pay, back pay (with interest), and by awarding each liquidated, and/or nominal damages, attorney's fees, costs, and expenses;

4. Grant Plaintiff a preliminary and permanent injunction pursuant to 29 U.S.C.

§2617(1)(B) directing the Defendant to reinstate all of Plaintiff's employment benefits, including but not limited to her health insurance and retirement benefits, retroactive to the date of their cessation;

5. Enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(II) against the Defendant and in favor of the Plaintiff for the monetary losses Plaintiff sustained as a direct result of the Defendant's termination of Plaintiff in violation of the FMLA and an additional amount as liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii); and

6. Grant Plaintiff such other relief as justice requires.

**THE PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted this 20th day of November, 2020:

___/s/Abby M. Richardson_____
Abby M. Richardson (RICHA3209)
**RICHARDSON LAW FIRM, LLC**
118 North Royal Street
Suite 100
Mobile, Alabama 36602
251-338-1695
abby@richardsonlawllc.com

*Counsel for Plaintiff*

**DEFENDANT MAY BE SERVED AT:**

LABORATORY CORPORATION OF AMERICA HOLDINGS C/O

CORPORATION SERVICE COMPANY INC

641 SOUTH LAWRENCE STREET

MONTGOMERY, AL 36104